[Civ. No. 5084. Second Appellate District, Division One.—August 10, 1927.]

S. LEVINSON et al., Respondents, v. EDNA ELBOW, Appellant.

Janeway, Beach & Pratt for Appellant.

Shapiro & Shapiro for Respondents.

HOUSER, J.—The judgment from which the appeal herein is presented to this court was rendered in an action brought for the purpose of enjoining the enforcement of a deed of trust on certain real property, as well as for having it declared that the deed of trust had been satisfied and paid.

From the findings of fact made by the trial court, as well as from evidence adduced at the trial, it appears that the plaintiffs and defendant Elbow were the owners of the entire outstanding stock of Fashion Hat Company, a corporation (hereinafter styled the corporation), of which stock plaintiffs owned seventy-one shares and defendant Elbow

owned fifteen shares; that one of the plaintiffs was the president and that defendant Elbow was the secretary of the corporation; that the corporation borrowed from the defendant Continental National Bank (hereinafter termed the bank) the sum of $4,000, evidenced by the promissory note of the corporation, attested by its said president and its said secretary, and as security therefor the seventy-one shares of stock owned by plaintiffs, an assignment to the bank of "accounts receivable" of said corporation amounting to approximately $5,000, and the trust deed of plaintiffs on certain real property were deposited with the defendant bank; and that the said deposit of securities was also made security for a prior indebtedness of $750 owing by the corporation to the bank. It further appeared that the corporation was also indebted to the defendant Elbow in the sum of $3,000, evidenced by a promissory note in her favor; also, that at the time the $4,000 loan was made by the bank to the corporation both the plaintiffs and the defendant Elbow personally guaranteed the payment thereof; and as security for her said guaranty defendant Elbow deposited with the bank a certified check in her favor for the sum of $4,000, which check was immediately cashed by the bank and its own cashier's check for the same amount in favor of said defendant Elbow was issued, but which check the bank retained in its possession. The record further discloses the facts that after the sum of $2,097.14 had been collected by the bank from the "accounts receivable" of the corporation and applied by the bank toward the discharge of the indebtedness owing by the corporation to the bank, for a consideration of the sum of $2,652.86, which was the total amount then owing to the bank, both on the $4,000 note and the $750 note of the corporation, the bank sold and assigned to an agent representing defendant Elbow the two promissory notes of the corporation to the bank and delivered to such agent all the securities which had been deposited by the corporation with the bank on account of said total indebtedness—the cashier's check for the sum of $4,000 deposited with the bank by defendant Elbow as security for her guarantee of the payment of the loan to the corporation at the same time being delivered to defendant Elbow. Within a few days following such sale and assignment, the said agent of defendant Elbow, acting within his assumed

and purported powers as holder of said promissory note and as pledgee in connection therewith, conducted a "pretended auction" sale of said note and said securities held by him, at which sale defendant Elbow, in her own name, became the purchaser thereof for the exact sum which her agent in her behalf had theretofore paid to the bank for such notes and securities. Shortly thereafter she sold and delivered to certain other persons the said seventy-one shares of stock belonging to the plaintiffs, together with her own fifteen shares of stock, for the sum of $4,000, which money, together with whatever sums might be collected on the "accounts receivable" of the corporation, were placed in a trust account for the purpose of paying creditors (other than defendant Elbow, and the balance of $750 on the former note of the corporation to the bank) of the corporation—after the claims of all such creditors had been paid, the balance remaining from the $4,000 paid for such stock and the money received from the "accounts receivable" to be applied toward the payment of the $3,000 note owing by the corporation to defendant Elbow—which arrangement was carried out, the defendant Elbow receiving therefrom, to her own use, an amount approximating $2,400.

The trial court further found as facts: "That the said defendant, Edna Elbow, is the holder of said promissory note and the said Deed of Trust, signed by said S. Levinson and Tillie Levinson, as aforesaid, and that the moneys realized by the said Continental National Bank of Los Angeles, a corporation, from the outstanding accounts and the moneys realized subsequently by the defendant, Edna Elbow, for the shares of stock in said Fashion Hat Company, a corporation owned by said plaintiffs together with the moneys realized by said Edna Elbow from said outstanding accounts, is more than sufficient to fully pay and satisfy the said promissory notes of the said Fashion Hat Company, a corporation, and that the said Four Thousand ($4,000.00) dollar promissory note, made, executed and delivered by the plaintiffs, S. Levinson and Tillie Levinson, husband and wife, on the 12th day of December, 1921, in favor of the Continental National Bank of Los Angeles, a corporation, and secured by the said Deed of Trust of said date of December 12th, 1921, covering the real property

heretofore described, and the interest thereon, is fully paid and satisfied.''

Appellant complains principally that ''this case fails to sustain or justify the finding of the trial court to the effect that the trust deed note here involved has been fully paid; nor would it support a finding that anything had been paid on said note. . . . '' Appellant also questions one other finding to the same effect, that the ''moneys realized by the defendant bank from the accounts receivable, together with the moneys realized by Mrs. Elbow from said accounts, was more than sufficient to fully pay and satisfy the trust deed note. . . . ''

In the circumstances of this case, the effect of the sale and assignment by the bank to the agent of appellant of the $4,000 note and the securities therefor should be regarded as a sale directly to appellant. Besides being the secretary of the corporation, Mrs. Elbow was a guarantor of the payment of the note, and she should be permitted to make no profit from the transaction. The facts adduced from the evidence show that, aside from her arrangement with the final purchasers of the outstanding shares of stock of the corporation to pay off the debts of the corporation, for those shares of stock she received in trust the sum of $4,000, to be used for the purpose of paying certain debts of the corporation; that at that time the amount unpaid on the $4,000 note of the corporation was approximately $1,900; and that defendant Elbow personally received the sum of $2,400. While it is true that defendant Elbow paid to the bank the sum of $2,652.86 for the note and the securities therefor, it should be remembered that such amount included payment of the former indebtedness of $750, also owing by the corporation to the bank. Added to this circumstance, the evidence and the findings by the court disclose the fact that after the final sale of the shares of stock of the corporation had been made by defendant Elbow she received in payment of certain ''accounts receivable'' the sum of $603.39, which amount, however, was included in the $2,400 received by her, to which reference has been had. The trust deed and the note appurtenant thereto were given primarily as security for the principal note evidencing the loan of $4,000 made by the bank to the corporation. All payments made to the bank by the cor-

poration were credited to the principal note. The sale by defendant Elbow of the entire outstanding stock of the corporation was primarily for the sum of $4,000. In view of the implied agency of defendant Elbow in the premises, it is apparent that defendant Elbow having received the sum of $2,400 net for the seventy-one shares of stock belonging to the plaintiffs and the fifteen shares of stock of which defendant Elbow was the owner, it would follow that at least the plaintiffs should be entitled to a credit of seventy-one eighty-sixths of the $2,400, or the sum of $1,981.39, which would be more than sufficient to satisfy the balance remaining due on the principal note given to the bank and for which the trust deed and its accompanying note were deposited as a guaranty. The fact that under the arrangements made by defendant Elbow with the purchasers of the stock to the effect that out of the moneys to be paid for such stock, together with any sums received on "accounts receivable" (which actually amounted to $603.39), it would be necessary to pay creditors of the corporation (other than defendant Elbow, and the sum of $750 owing by the corporation to the bank as a balance due on the promissory note given at a time preceding the date of the principal note here under consideration), should not militate against the conclusion reached by the trial court to the effect that the principal note was paid, and as a consequence that no further obligation existed on the part of the plaintiffs to satisfy the trust deed and the promissory note of which such trust deed was the security.

It satisfactorily appearing from the evidence that the principal indebtedness has been fully paid and discharged, it follows that the trust deed and its note should also be so regarded. As hereinbefore indicated, the evidence shows that sufficient money was received from the sale of the stock of the corporation and its "accounts receivable" not only to pay the balance of the indebtedness owing by it to the bank on the principal obligation, but as well to discharge certain other obligations of the corporation, which by computation are found to amount to the sum of $2,203.39. This court is therefore convinced that the findings of the trial court to which appellant objects are sustained by the evidence.

Other objections made by appellant to certain other findings require no consideration for the reason that they are either included in the findings already considered herein, or, as suggested by appellant, they are really immaterial and unnecessary to a decision of the case.

The judgment is affirmed.

Conrey, P. J., and York, J., concurred.

A petition by appellant to have the cause heard in the supreme court, after judgment in the district court of appeal, was denied by the supreme court on October 5, 1927.